UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NIKOLE J. HANSEN,<br><br>     Plaintiff,<br><br>v.<br><br>JEROME JOINT SCHOOL DISTRICT #261,<br><br>     Defendant. | Case No. 1:11-cv-00073-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it Defendant Jerome Joint School District #261's ("JSD") Motion for Summary Judgment and related Motion to Strike. (Dkt. 20, 24.) Plaintiff Nikole "Nikki" Hansen ("Hansen") alleges that she suffers from post-concussion syndrome. She maintains her condition qualifies as a disability under the Americans with Disabilities Act ("ADA"), and that JSD failed to renew her teaching contract because of her disability. Hansen asserts claims for discrimination and failure to accommodate under the ADA.

The Court conducted a hearing on May 3, 2012, at which the parties appeared and argued their respective positions. At the conclusion of the hearing, the Court took the

matter under advisement. After carefully considering the parties memoranda, their arguments, and relevant authorities, the Court will deny the motion for summary judgment and the related motion to strike for the reasons explained below.

## FACTS[1]

JSD hired Hansen as a physical education teacher at Jerome High School under a one year contract for the 2008—2009 school year. Hansen also was hired to coach girls volleyball and basketball. On September 9, 2008, Hansen was hit in the head during a team volleyball practice with a volleyball served at high velocity. After the incident, Hansen sought medical treatment and later filed a workers' compensation claim. Hansen first saw physician assistant William Jacobs on September 12, 2008, for treatment for her injury. P.A. Jacobs diagnosed Hansen with a concussion. (Capps Aff. Ex. A, Dkt. 20-4.) Although Jacobs released Hansen to work, she was restricted to sedentary work.

On September 18, 2008, Hansen again saw Jacobs, who diagnosed Hansen with traumatic vertigo and post-concussion syndrome. On this visit, Jacobs referred Hansen to a neurologist, and did not release Hansen to return to work. (Capps Aff. Ex. B, Dkt 20-4.) On September 23, 2008, Hansen returned to Jacobs, who on this appointment cleared Hansen to return to work provided she did not walk on rough, uneven ground, did not jump, and did not participate in sports. (Capps Aff. Ex. C, Dkt. 20-4.) On September 26, 2008, Hansen followed up with Jacobs, who on this appointment referred Hansen to a

---

[1] The following facts are what the Court deems to be the relevant, material, and undisputed facts for purposes of JSD's motion. Hansen "objected" to Plaintiff's Statement of Undisputed Facts, but primarily offered argumentative and unsupported "objections," not facts. *See Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995) (holding that statements in a brief, unsupported by the record, cannot be used to create an issue of fact). The Court has therefore carefully reviewed the affidavits, depositions, and exhibits submitted in support of and in opposition to the Motion.

**MEMORANDUM DECISION AND ORDER - 2**

chiropractor, and limited her activities to exclude sports. (Capps Aff. Ex. D.) By October

13, 2008, Jacobs had cleared Hansen to return to work with no restrictions. (Capps Aff.

Ex. F.) However, on November 18, 2008, Hansen presented to the emergency room, and

the emergency room physician was of the opinion that Hansen's injury rendered her

"totally incapacitated" and unable to return to work. (Capps Aff. Ex. H.)[2]  On November

20, 2008, P.A. Bob Gruver determined she could return to work without restriction.

(Capps Aff. Ex. I.) On November 24, 2008, P.A. Jacobs cleared Hansen to return to

sedentary work. (Capps Aff. Ex. K.)

Throughout the fall school semester, Hansen communicated primarily with

Marsha Capps, the Jerome School District Payroll Specialist, about her condition and her

absences. (Capps Aff.; Castleton Aff. Ex. B, Hansen Depo. at 34-35, Dkt. 30-3.) Between

November 24, 2008, and March 10, 2009, Capps did not receive any further medical

reports from Hansen other than notes excusing Hansen for missing partial days for

doctor's appointments. (Capps Aff. ¶ 20.) On March 10, 2009, after seeing Dr. Brait, a

neurologist, Hansen provided Capps with a "disability certificate" dated March 10, 2009,

excusing Hansen from work "until 4/9/09." (Capps Aff. ¶21, Ex. L.) The certificate

contained no further diagnosis or notation.

Hansen returned to work on April 10, 2009, and continued to teach until the end of

the school year. (Capps Aff. ¶26, Ex. O.)However, on April 17, 2009, JSD informed

Hansen that her teaching contract was not being renewed for the 2009—2010 school

---

[2] Hansen claims that she received a different medical release. (Pl. Obj. at 2, Dkt. 23-4.) However, Hansen has not
provided any other medical release in the record.

**MEMORANDUM DECISION AND ORDER - 3**

year. (Capps Aff. ¶27; Muscat Aff. ¶17, Ex. B, Dkt. 20-5.) Hansen's Teacher Evaluation Form dated February 16, 2009, which was received and signed by Hansen on April 16, 2009, indicated that she had received an "unsatisfactory" evaluation for serving students' needs because of "missing more school than allowed under leave policy." (Muscat Aff. Ex. A, Dkt. 20-5 at 11.) The explanation for the unsatisfactory mark further stated that Hansen was "expected to perform duties in accordance with the board of education policies and this has been a concern with employee attendance at school. Ms. Hansen has exceeded the JSD policy of established number of days gone from work and we are concerned at this point if the conditions of employment established by the JSD can be followed in the future." (*Id.*)

Hansen's final evaluation, dated May 26, 2009, and signed by administrator Jones on May 19, 2009, but not by Hansen, contained a similar handwritten notation at the end of the evaluation stating that Hansen had "exceeded the JSD policy of established number of days gone from work," and there "has been a concern with employee attendance at school" in conflict with board of education policies. Hansen does not dispute that, over the course of the school year, she missed a total of 47.3 days of work, and of that total, 38.6 days were absences directly related to her medical condition, including partial absences for doctor's appointments. (Capps Aff. ¶16, Ex. S.)

Hansen claims she received accommodations that allowed her to continue to teach successfully despite her medical condition by receiving time off for medical appointments, having substitute teachers cover her classes, having teaching assistants, and having a first period prep class during the spring trimester, which began on March 2,

2009, and continued until June of 2009. (Hansen Aff. ¶18, Dkt. 23-2; Muscat Aff. ¶15, Dkt. 20-5.) However, Hansen acknowledges that these accommodations, including the teaching assistants and first period prep class, were arranged in the regular course of JSD's business prior to the beginning of the school year. (Hansen Aff. ¶18.) Clark Muscat, the Jerome High School Principal, explained that the timing of the prep hour was determined by a computerized class scheduling system, and was dependent upon student schedule requests. (Muscat Aff. ¶¶ 4—13, Dkt. 20-5.) Principal Muscat contends he was never aware that Hansen specifically requested any special accommodation while employed at JSD. (Muscat Aff. ¶14.) Similarly, Capps indicates that she did not receive any communication regarding any accommodation that would assist Hansen. (Capps Aff. ¶34.) And Hansen likewise alleges that JSD did not discuss or present potential accommodations, nor did she raise the issue. (Castleton Aff. Ex. B, Hansen Depo. at 63, 70—71, Dkt. 20-3.)

Hansen contends, however, that upon her return to work on April 10, 2009, she had recovered to the extent that she was able to perform all of her teaching duties up through the end of the school year, with accommodations such as the first period prep hour and teaching assistants, plus accommodations to attend doctor's appointments. (Second Hansen Aff. ¶ 2, Dkt. 23-3.) Hansen avers that, at the end of the 2008—09 school year, she would have been able to return for the 2009—10 school year "with even less accommodation than [she] had been receiving." (Hansen Aff. ¶18, Dkt. 23-2.)

After her return to work in April of 2009, Hansen continued to receive medical care. On June 1, 2009, Dr. Brait provided Jacobs with an examination progress note.

**MEMORANDUM DECISION AND ORDER - 5**

(Castleton Aff. Ex. C, Dkt. 20-3.) Dr. Brait indicated Hansen had a "bit of a setback" with worsening headaches and neck pain, along with nystagmus, which he attributed to the primary injury from September of 2008. Dr. Brait indicated that he would "anticipate that [Hansen] will continue to slowly improve" over the next 6 months, and if she did not, he recommended evaluation at the Dizzy Imbalance Center. However, he hoped that in the next six months, Hansen would become "virtually asymptomatic." Capps received an email communication about the progress note on June 15, 2009, from Greg Taylor, in which Taylor relayed Hansen's concerns that she would be "off work for another six months," and although Hansen "wants to return to teaching [she] thinks it could be 1 to 2 years before she can do it." (Capps Aff. Ex. R, Dkt. 20-4.)

After a follow-up visit with Dr. Brait on November 4, 2009, Dr. Brait provided a progress update to P.A. Jacobs and informed him that Hansen "had not changed very much" and was "still unable to return to work at her former job." (Castleton Aff. Ex. E, Dkt 20-3.) However, on September 29, 2009, an intra-office memo dictated by Dr. Brait noted that an independent medical evaluation performed by Dr. V. Kadyan in August of 2009 concluded that there was "no objective basis for restrictions." (Castleton Aff. Ex. D, Dkt. 20-3.) Hansen was told by Dr. Kadyan in August of 2009 that she could return to work. (Castleton Aff. Ex. G, Apr. 16, 2010, Hansen Depo. at 102—03, Dkt. 20-3.)

On December 10, 2009, Hansen filed a complaint seeking workers compensation benefits with the Idaho Industrial Commission, claiming total temporary disability status and requesting that the Commission pay benefits. (Castleton Aff. Ex. F.) In connection with her workers compensation case, Hansen was deposed on April 16, 2010. Hansen

**MEMORANDUM DECISION AND ORDER - 6**

confirmed that, in September of 2009, Dr. Brait indicated to her that she could not return

to work as a physical education teacher. (Castleton Aff. Ex. G, Apr. 16, 2010, Hansen

Depo. at 100.) When asked about her other teaching credential, history, which is a more

sedentary job, Hansen was asked and testified as follows:

> Q: Do you feel that you could have done a history teacher's job?
> A: I don't.
> Q: Why couldn't you do a history teacher's job?
> A: There's a lot more to teaching than just sitting at a desk and standing up
> instructing students. You know, you have the grading of the papers and
> the–you know, the daily just mental grind that it takes, and right now I
> don't have that capability.
> Q: What in particular do you feel about your accident from September 2008
> would prevent you from functioning as a history teacher for the Jerome
> School District?
> A: The medications that I have to take on a daily basis to function. I don't
> have the mental capabilities to have that level of expertise to teach. I don't
> have the ability to focus and recall those–the information as well.
> Q: Do you feel that is going to change substantially by June of this year?
> A: I don't.

(Castleton Aff. Ex. G, Apr. 16, 2010, Hansen Depo. at 113—114.)

As for her ability to teach physical education, Hansen was asked and testified as

follows:

> Q: Well, according to Drs. Beaver and Kadyan, there's no reason that you
> couldn't go back to being a PE teacher, and I take it you disagree with that.
> A: I do.
> Q: And you base that on whose opinion, other than your own?
> A: I base that on what I know of what it takes to be a PE teacher.
> Q: But do you rely on anyone's professional opinion?
> A: I rely on Dr. Brait and Dr. Speed.
> Q: And if Dr. Kadyan and Dr. Beaver also said that you're capable of being
> a history teacher–which I presume they would since it's less active than a
> PE teacher, wouldn't you agree?
> A: Right.
> Q: Is there a reason you feel you couldn't be a history teacher at this point?

**MEMORANDUM DECISION AND ORDER - 7**

A: I honestly don't feel like I can be a teacher at this point right now. I
don't. I know my body can't keep up with the daily rigors of being a
teacher.
Q: Even in sixth grade?
A: Right.

(Castleton Aff. Ex. G, Apr. 16, 2010, Hansen Depo. at 119—120.) Hansen has stated also

that, until she was examined by physicians at the Pittsburgh clinic in December of 2010,

she "did not feel . . . capable of engaging in full time employment, both because of [her]

medical condition and the medications which [she] was being prescribed." (Castleton

Aff. Ex. I, Interrog. No. 7, Dkt. 20-3; Hansen Aff. ¶14, Dkt. 23-2.) But Hansen contended

that she could have continued to work as a physical education teacher had she been given

reasonable accommodations. (Castleton Aff. Ex. A, Hansen Depo. at 76, Dkt. 27-1.)

## ANALYSIS

### 1.    Summary Judgment Standard

One of the principal purposes of summary judgment "is to isolate and dispose of

factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which

factually insufficient claims or defenses [can] be isolated and prevented from going to

trial with the attendant unwarranted consumption of public and private resources." *Id.* at

327. "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id*. at 526–57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary

**MEMORANDUM DECISION AND ORDER - 9**

judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

To preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court." *Pfingston v. Ronan Eng. Co.*, 284 F.3d 999, 1003 (9th Cir. 2002). In the absence of an objection, the Court may consider hearsay evidence. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1094 (9th Cir. 1990).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995). The Ninth Circuit Court of Appeals "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a

witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id*.

## 2.    Discrimination Under the ADA

To state a prima facie case under the ADA, a plaintiff must demonstrate that: "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." *Braunling v. Countrywide Home Loans Inc*., 220 F.3d 1154, 1156 (9th Cir. 2000); *Nunes v. Wal–Mart Stores, Inc*., 164 F.3d 1243, 1246 (9th Cir. 1999).

On a motion for summary judgment, a prima facie case of discrimination is established where plaintiff demonstrates there are genuine issues of material fact as to each of these elements. *See Snead v. Metropolitan Property & Cas., Ins. Co*., 237 F.3d 1080, 1088–90 (9th Cir. 2001) (examining claim of discrimination under the ADA). The Ninth Circuit has recognized that "[m]aking a prima facie showing of employment discrimination is not an onerous burden." *Id*. at 1091–92 (recognizing the importance of applying all three parts of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Where a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to come forward with a non-discriminatory reason for discharge. *Id*. at 1093. The burden then shifts back to the plaintiff to show that the employer's reason for termination was pretext for discrimination. *Id.* To succeed on its motion, JSD must show that either: (1) Hansen has not established a prima facie case, or (2) despite an adequate

showing of a prima facie case, Hansen has failed to demonstrate material issues of fact as to whether JSD's stated reason for not renewing Hansen's contract—violation of Board of Education Policies and JSD's policies regarding employee attendance—is pretextual. JSD's motion focuses on the second element of Hansen's prima facie case under the ADA.

### A.   *Disability Under the ADA*

Under the ADA, an employee is disabled if, in relevant part, her physical or mental impairment substantially limits one or more of the major life activities. *See* 42 U.S.C. § 12102(2)(A). In this case, JSD concedes, for purposes of this motion only, that Hansen is disabled due to her post-concussion syndrome. However, JSD argues that Hansen cannot establish that she is qualified, with or without reasonable accommodation, to perform the essential functions of her position as a physical education teacher. JSD contends that Hansen's absenteeism in violation of school policy, and the unreasonableness of her requested accommodations, preclude her from proving the second essential element of her prima facie case. Hansen, on the other hand, opposes JSD's arguments, and asserts that there are genuine factual disputes on each issue precluding summary judgment.

### B.   *Qualified for the Position*

#### (1)   *The Alleged Sham Affidavits*

JSD contends that portions of the first and second Hansen Affidavits should be stricken because the statements made therein conflict with Hansen's deposition testimony

**MEMORANDUM DECISION AND ORDER - 12**

from April 16, 2010, wherein Hansen testified she could not return to work at that time.[3] JSD argues that Hansen's affidavits, wherein she states that she could have returned to work with accommodations, are inconsistent with her prior sworn deposition testimony. Hansen contends, on the other hand, that she could have and did perform her job with the accommodations she was given.

In *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795 (1999), the United States Supreme Court addressed the perceived inconsistency between statements made in furtherance of seeking disability coverage under the Social Security Act, and statements that the employee could perform essential functions of her job under the ADA. In *Cleveland*, in support of a disability claim, the employee stated she had been unable to work since she was terminated from employment due to her medical condition. However, in support of her ADA claim, the employee contended she could have continued working with reasonable accommodations. The Supreme Court explained that the two statements "do not inherently conflict," because "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Cleveland*, 526 U.S. at 803. In other words, a disability claimant avers that she is too disabled to work, whereas an ADA claimant avers that she is too disabled to work without reasonable accommodations.

---

[3] JSD seeks to strike other portions of the Hansen Affidavits, wherein Hansen describes her current employment, her opinion that the events of April 17, 2009, caused her to regress and exacerbate her symptoms, and other alleged mischaracterizations of the medical evidence. (Def.'s Mem., Dkt 24-1.) However, the Court did not consider the statements material for purposes of deciding the motion for summary judgment, and therefore finds that JSD's motion to strike those statements are moot.

**MEMORANDUM DECISION AND ORDER - 13**

Nevertheless, because an assertion that an employee is unable to work appears to negate an essential element of an ADA case, the Supreme Court held that an ADA plaintiff "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland*, 526 U.S. at 806. Thus, when the conflict involves a legal conclusion on the ultimate issue of disability, the court must require an explanation of the inconsistency. *Id.* at 807. "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807.

In an earlier case consistent with *Cleveland* and decided by the United States Court of Appeals for the Ninth Circuit, the court explained the basis for permitting an employee to explain the apparent inconsistency. The court noted that the Social Security Act does not take into account an individual's ability to work with accommodation. *Johnson v. State of Oregon*, 141 F.3d 1361, 1366 (9th Cir. 1998). However, a person found disabled pursuant to the Social Security Act could "still be a qualified individual under the ADA because she can work with reasonable accommodations, if her employer will provide them." *Johnson*, 141 F.3d at 1367. Thus, although factual statements could be binding in later ADA claims, the court held there was no *per se* rule. *Id.* at 1368. Rather, the court must evaluate the alleged inconsistent statements to determine whether

**MEMORANDUM DECISION AND ORDER - 14**

an issue of fact exists. *Id.* at 1369.[4] *See also Brennan v. Qwest Communications International, Inc.*, No. 1:09-cv-245-BLW, 2010 WL 4023908 *4 (Oct. 10, 2010) (applying *Cleveland*). The principles in *Johnson* and *Cleveland* have since been applied to similar inconsistent statements involving workers' compensation and ADA claims. *See McDonald v. Mt. Perry Foods, Inc.*, No. C2:09-cv-0779, 2011 WL 3321470 *11 (S.D. Ohio Aug. 2, 2011) (citing cases and holding that *Cleveland* applies generally to conflicts between claims for benefits and claims for damages, not just to conflicts between the SSA and the ADA).

Turning to the facts presented here, the Idaho Workers' Compensation Act defines disability for purposes of determining total or partial temporary disability income benefits as "a decrease in wage-earning capacity due to injury or occupational disease, as such capacity is affected by the medical factor of physical impairment, and by nonmedical factors such as age, sex, education, economic and social environment." *Sykes v. C.P. Clare & Co.*, 605 P.2d 939, 943 (Idaho 1980) (citing Idaho Code § 72-102(8)). However, "[i]t is not necessary for a person to be physically unable to do anything worthy of compensation to be classified as totally disabled." *Lyons v. Industrial Special Indem. Fund*, 565 P.2d 1360, 1363 (Idaho 1977). Moreover, an employee is entitled to temporary total disability benefits until the employer or another employer offers the employee work

---

[4] The *Johnson* court noted that the theory of judicial estoppel was an alternative theory to evaluate an inconsistency, but that "straightforward summary judgment analysis, rather than theories of estoppel, will be appropriate in most cases." *Johnson*, 141 F.3d at 1369. JSD cited *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) in support of its motion to strike, which applied principles of estoppel, and argued Hansen should be stopped from making her ADA claims. JSD's estoppel argument goes no further than the apparent inconsistency between an ADA claim and a disability claim, which the court in *Cleveland* found not to be a per se bar. Therefore, the Court finds, that application of estoppel is not warranted.

**MEMORANDUM DECISION AND ORDER - 15**

within his capabilities. *Perkins v. Croman, Inc.*, 9 P.3d 524, 528 (Idaho 2000). Noticeably absent in the workers' compensation scheme is a consideration of accommodations. Thus, an application for temporary total disability benefits is not necessarily inconsistent with an ADA claim.

Hansen has proffered a sufficient explanation for her apparent contradictory statements, and the medical and factual evidence submitted to the Court is inconclusive. On the one hand, Hansen's independent medical exam cleared her to return to work as of August of 2009, with no restrictions. Throughout the 2008—2009 school year, P.A. Jacobs also cleared Hansen to return to work. Dr. Brait, Hansen's treating neurologist, while of the opinion that Hansen could not return to work at her former job, said nothing of returning to work with accommodations. Dr. Brait's June 1, 2009, letter indicated that, in six months, Hansen could become asymptomatic, and said nothing at that time about Hansen's ability to work with or without accommodations. Hansen's acceptance of Dr. Brait's diagnosis of disability is not inconsistent with Hansen's claims, given that Hansen claims she could have worked with reasonable accommodations. *See Johnson*, 141 F.3d at 1370 (finding that employee's acceptance of physician's opinion of "permanent disability" did not conflict with employee's ADA claim). And Hansen was able to return to work on April 10, 2009, to complete her contract for the school year albeit with some absences related to her medical condition and to attend doctor's appointments. Although the accommodations were not overtly provided, Hansen indicated that the presence of teacher's aides and a first period prep enabled her to perform her job as a physical education teacher.

**MEMORANDUM DECISION AND ORDER - 16**

Hansen's deposition testimony on April 16, 2010, is not necessarily inconsistent with her ADA claim, either. When asked whether she could perform a history teacher's job, a more sedentary job, Hansen indicated that "right now I don't have that capability." (emphasis added). She was not asked whether she could perform the job with accommodations. Moreover, her answer was temporally limited to the time of the questioning. Hansen explained in her third affidavit that her answer was truthful at the time, because medication adjustments in January and February of 2009 had caused her to feel less energetic. (Third Hansen Aff. ¶1, Dkt. 26-1.) Similarly, when asked whether she could return to being a physical education teacher, Hansen did not believe she could return in that capacity at the time of the deposition. JSD has not pointed the Court to any questions asking about accommodations such that Hansen could have performed as a physical education teacher or a history teacher. Hansen contended she could return to work in a part-time capacity, or full time with reasonable accommodations.[5]

Given the record before the Court, the evidence presented by Hansen raises questions of fact. Further, considering the different goals of the Workers' Compensation Act and the ADA, and considering *Cleveland*, the two affidavits and statements made therein concerning Hansen's ability to work will not be stricken. There remain genuine issues of material fact concerning Hansen's ability to work.

**(2)      *Hansen's Attendance***

---

[5] JSD argues also that her April 2010 deposition testimony was contradictory to the statements Hansen made to the Idaho Human Rights Commission in August of 2010. Again, the goals of the ADA and the workers' compensation statutes are different, and Hansen has explained the inconsistencies.

**MEMORANDUM DECISION AND ORDER - 17**

JSD next asserts that regular, consistent attendance is an essential function of being a teacher, and Hansen's inability to fulfill that requirement meant she was not a "qualified individual" as defined under the ADA. JSD cites the fact that Hansen's teaching contract was for a period of 190 days, yet Hansen missed 25% of the school year in absences. Hansen contends that she did attend her work consistently, and her excellent performance evaluation (other than the noted attendance issues) indicated she could perform her teaching duties.

In *Tyndall v. Nat'l Education Centers, Inc*., 31 F.3d 209, 213 (4th Cir. 1994), the Fourth Circuit had occasion to consider regular attendance as an essential job function. The court concluded that, except in the unusual case where an employee can effectively perform all work-related duties at home, a regular and reliable level of attendance is a necessary element of most jobs. *Tyndall*, 31 F.3d at 213. If an employee cannot meet the attendance requirements of the job, she cannot be considered a "qualified" individual protected by the ADA. *Tyndall*, 31 F.3d at 213. *See also Samper v. Providence St. Vincent Medical Center*, No. 10-35811, __F.3d ___ (9th Cir. Apr. 11, 2012).[6] In *Tyndall*, the court upheld the lower court's determination that Tyndall, a teacher, was unable to fulfill the essential functions of her job even with the employer's accommodations, and was therefore not a qualified individual. Similarly, in *Samper*, the court affirmed the district court's determination that Samper, a NICU nurse, was unable to meet the attendance requirements despite the hospital's accommodations, and was therefore not a qualified individual under the ADA.

---

[6] Accessed at: http://www.ca9.uscourts.gov/datastore/opinions/2012/04/11/10-35811.pdf

**MEMORANDUM DECISION AND ORDER - 18**

While the Court agrees with JSD's assertion that, in general, a teacher's regular attendance is a job requirement, JSD has not provided the Court with any information concerning its attendance policy. Hansen admits she missed 38.6 days of work as a result of her medical condition, which included partial absences and the thirty day leave. But nowhere in the record has JSD pointed to what the school's policies were with respect to absences related to a medical condition. Further, JSD admitted at the hearing that there was no written policy. Although the circumstances were different, another teacher, Ms. Erica Rogers, was granted extended leave related to her pregnancy. (Huntley Aff. Ex. 5, Rogers Depo. at 16, Dkt. 23-1.)[7] Hansen's two performance evaluations refer to the school's and the board's absence policy, but a copy was not provided nor was an explanation given concerning how Hansen's conduct failed to fulfill the policies. The scant evidence in the record appears limited to Capps's testimony that Hansen sometimes did not have an approved doctor's note directing her absences, and Hansen's own testimony that substitute teachers do not provide consistency in instruction. (JSD Statement of Facts ¶¶ 15, 33, Dkt. 20-2.) However, Capps required a doctor's note in order to pay Hansen wages for allowed sick days.

In contrast, the court in *Samper* had at its disposal the written job description requiring "strict adherence" to the attendance policy, a copy of the actual attendance policy, and a detailed factual record of multiple absences, disciplinary action, and documented attempts to accommodate the employee's condition of fibromyalgia. *Samper*

---

[7] Ms. Rogers's leave was granted pursuant to the Family Medical Leave Act. In this case, the issue involves the ADA and its overlap with attendance requirements.

**MEMORANDUM DECISION AND ORDER - 19**

at 3888—89. Similarly, in *Tyndall*, the court considered the employer's numerous attempts to assist Tyndall with her work schedule, but noted that even with such accommodations, she was unable to teach the assigned courses during the scheduled class times, spend time with her students, and she missed the beginning of an instructional cycle. *Tyndall*, 31 F.3d at 213. The employer in *Tyndall* also provided an explanation of how Tyndall's absences had affected the school's operations. *Id.* at 212, 213.[8] *See also Brennan*, 2010 WL 4023908 at *5 (wherein the Court examined the employer's corrective action process and the nature of the absences in relation to the absence policy).

In contrast, JSD does not provide the Court with an explanation, other than a general one, of how Hansen's absences affected the school's functioning; how Hansen failed to follow the attendance policy other than a generalized assertion that she missed work for 25% of the school year and sometimes did not bring in a doctor's note; and, whether there was a corrective action process in place to document the reasons for and disciplinary action related to the missed work. The Court therefore finds that JSD has failed to carry its burden demonstrating the absence of a genuine issue of material fact on the issue of attendance.

### (3)     *Reasonable Accommodation*

The final reason JSD asserts summary judgment is proper is its argument that Hansen's proposed accommodations would not have reasonably allowed her to continue working at JSD. Hansen identified the following accommodations: 1) offering her short-

---

[8] In an unrelated case, JSD provided its attendance policies related to a janitorial position. *Atencio v. Joint Jerome School District #261*, No. 2:10-cv-00130-BLW, 2011 WL 3439940 (Aug. 8, 2011).

term disability insurance; 2) allowing her to take FMLA leave; 3) allowing her to use the Sick Leave Bank to compensate her for her absences; 4) providing her teacher aids; 5) allowing her prep period to be either the first or last period of the day; 6) making her class sizes consistent in terms of student enrollment; and 7) reducing the stresses of her being a new teacher. (JSD SOF ¶ 28, Dkt. 20-2.)

JSD asserts that several of Hansen's proposed accommodations were not reasonably available to her, such as family leave, the sick leave bank, consistent class sizes, and a first period prep hour. JSD argues that several accommodations, such as consistent class sizes and a first period prep hour, would have worked an unreasonable hardship upon students. Alternatively, JSD contends that, even with several identified accommodations such as teaching aids and a first hour prep period during the third trimester, Hansen was unable to perform her job without excessive absences. Next, JSD contends that Hansen's proposed accommodations do not relate to her ability to work, but rather relate to her ability to be paid for time off work. Specifically, JSD mentions Hansen's request for a short term disability policy and paid leave from the sick leave bank. And finally, JSD mentions that none of Hansen's proposed accommodations came from her medical care providers. Hansen responds that the accommodations provided to her --- absences for doctor's appointments and time off work, teacher aides, and first period prep class---did allow her to perform her job. Additionally, Hansen argues that JSD did not work with her in good faith to assess her condition and determine whether it could reasonably accommodate her, especially going forward into the 2009-2010 school year.

**MEMORANDUM DECISION AND ORDER - 21**

To comply with the ADA, an employer must reasonably accommodate the employee with a disability unless the employer can show that such an accommodation would impose an undue hardship on the business. *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1157 (9th Cir. 2000). Where an employee requests a reasonable accommodation, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, —F.3d —, 2010 WL 3366256 (9th Cir. 2010) (citation omitted). A "reasonable accommodation" is a "modification[ ] or adjustment[ ] to the work environment ... that enables a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. §1630.2(o)(1)(ii). Whether reasonable accommodations have been provided to an employee claiming disability discrimination is ordinarily a question of fact for a jury. *Fuller v. Frank*, 916 F.2d 558, 562, n. 6 (9th Cir. 1990). But where no reasonable jury could find in favor of the non-moving party, a factual dispute is not "genuine" and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc*., 477 U .S. 242, 248 (1986).

The Ninth Circuit holds that the interactive process is "a mandatory rather than a permissive obligation on the part of employers under the ADA and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation. In circumstances in which an employee is unable to make such a request, if the company knows of the existence of the employee's disability, the employer must assist in initiating the interactive process." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds,*

**MEMORANDUM DECISION AND ORDER - 22**

*U.S. Air, Inc. v. Barnett*, 535 U.S. 391 (2002).[9] Employers cannot avoid a reasonable accommodation absent a showing of undue hardship, and it is the employer's burden to show that a proposed accommodation will cause undue hardship. *Barnett*, 228 F.3d at 1113.

However, employers must demonstrate that they acted in good faith, and may do so by pointing to cooperative behavior which promotes the identification of an appropriate accommodation. *Barnett*, 228 F.3d at 1115. If an employer fails to engage in the interactive process in good faith, liability for the failure to provide reasonable accommodations ensues when the employer bears responsibility for the breakdown. *Id.* *Barnett* held that "employers who fail to engage in the interactive process in good faith face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* at 116. But the court further held that "an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Id.*

In the matter before the Court, there is a genuine factual dispute whether JSD engaged in good faith in the interactive process. There is evidence in the record that, at the time of Hansen's one-month leave, JSD knew Hansen was suffering from the effects of a concussion, and resulting traumatic vertigo and post-concussion syndrome. At various times, medical care providers were of the opinion that Hansen needed time off work. She received a month off from work between March 10, 2009 and April 10, 2009.

---

[9] Employers also must meet statutory notification requirements informing employees of the reasonable accommodation provisions, who is entitled to accommodation and what is necessary to trigger the interactive process by posting notices about the applicable provisions of the ADA. *Barnett*, 228 F.3d at 1114 n.5.

MEMORANDUM DECISION AND ORDER - 23

There is, however, a material factual dispute concerning whether JSD initiated the interactive process in good faith, let alone at all. Both Principal Muscat and Capps received no communication regarding accommodations from Hansen or her care providers. But Hansen has testified that no one from JSD ever discussed or presented potential accommodations to her. And, Hansen did not ask for accommodations during the third trimester because teacher aides and first period prep hour were already implemented.

While Capps indicated she worked with Hansen to coordinate her absences in terms of payroll and paid time off, the parties dispute whether Capps's conduct satisfies the duty to engage in the interactive process. Capps did not raise the issue of accommodations with Hansen. As the payroll specialist, it does not appear from the record to have been Capps's job to do so. It is only after this litigation ensued, and Hansen was deposed about possible accommodations, that JSD argued the accommodations were unreasonable. Yet, JSD cannot leap to the unreasonableness of the proposed accommodations when there is a factual dispute over whether it engaged in a discussion of accommodations in the first instance,  or any accommodations at all, to allow Hansen to continue to work as a teacher for the school before it decided not to rehire her.

Hansen contends that the schedule already in place for the third trimester---teacher aides and a first period prep hour---along with the ability to leave work to receive medical care, were all the accommodations she needed to successfully do her job. Perhaps there were others beyond those Hansen thought of in the context of this

**MEMORANDUM DECISION AND ORDER - 24**

litigation. *See Barnett*, 228 F.3d at 115 (explaining that the range of possible reasonable accommodations, for purposes of establishing liability for failure to accommodate, can extend beyond those proposed). But the parties dispute that any discussion about such possibilities was ever initiated.

Summary judgment is therefore inappropriate in this case. The evidence is disputed concerning whether JSD initiated the interactive process at all before deciding not to renew Hansen's teaching contract for the 2009-2010 school year. Therefore, under *Barnett*, the Court need not address JSD's arguments about the unreasonableness or unavailability of the proposed accommodations.

## CONCLUSION

As discussed above, the Court will deny JSD's motion for summary judgment. Not only has JSD failed to carry its burden in important respects regarding its absence policy and the Board of Education absence policies, Hansen has demonstrated there are genuine issues of material fact on the issue of her qualifications and JSD's ability to accommodate Hansen's disability.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Strike Portions of the first and Second Affidavits of

   Nikki Hansen (Dkt. 24) is **DENIED**.

2) Defendant's Motion for Summary Judgment (Dkt. 20) is **DENIED**.

   A pre-trial scheduling order is forthcoming.

Dated: **May 07, 2012**

Honorable Candy W. Dale
United States Magistrate Judge